Brickman v. Meta Platforms, Case No. 21-16785. Each slide has 10 minutes. You're responsible for keeping track of your time, but if you are the plaintiff-appellant and you want to reserve time, if you tell me how much time you aspirationally want to reserve, I'll try to, I'm looking right at the clock, so I'll try to remind you, and so we're ready to begin. Okay, we'll say it at the podium when you make your appearance, because that's how we're recording. Good morning. Good morning, Your Honor. Good morning, judges, and good morning, Judge from the Sixth Circuit, where I practice. All right, if you can give us your name. My name is Kenneth Perotti. I work in Bernstein in Cleveland, Ohio, and I'm one of the attorneys for the plaintiff-appellant, and if I may reserve three minutes for reply. So will you be making the complete argument? I will. I'm here with my associate, Mr. Bartella. All right. Thank you. So you may proceed, and keep your voice up. You have kind of a soft voice, so make sure we can hear you. Thank you. Yes, Your Honor. A defendant in the district court rely on do-good, standing for the proposition that a dialing system constitutes an ATDS only if it actually creates, if it generates, the phone number. And just a few months ago, the Third Circuit confirmed specifically that that's wrong. In Panzarella, the Third Circuit said, and I'm quoting, therefore, do-good does not stand for the proposition that a dialing system will constitute an ATDS only if it actually generates random or sequential numbers. We don't have a lot of time. Why don't we jump to the fact, I know that we can talk about what other circuits do, but I think our circuit's going to pretty imminently in Borden be saying something on this.  And so I guess my question would be, I mean, I would not, we haven't conferenced on this case, but I'm going to anticipate we're probably going to wait for Borden to see what our circuit says. And you understand that we'll be bound by our circuit. Do you think Borden's going to answer the question here? First of all, Meyer addressed the question on an unreported decision, and the Borden panel talked about Meyer and said we're not bound by Meyer. I don't know if Borden is going to be published, if not, but I hope that... If it is, it's going to be binding on us. I believe it would be. And therefore, I hope that the Ninth Circuit, whichever panel we're talking about, understands that the TCBA covers two types of problems. It covers created numbers, which are numbers that are called to hospitals, police, fire, businesses. It also covers something else. Congress had a separate section of the statute. It's one-third of the statute. It covers numbers under B-1-3 to cell phones. Now, numbers to cell phones for texts, for example, they're not randomly generated. You don't have a random generator because it won't be calling only cell phones. It will be calling landlines. You can't send a text to a landline. And I think it's extremely important that the Court understand that in the Supreme Court, the judges, 9-0, said we reject every circuit, not just the Sixth and the Third and the Eleventh. Every circuit that addressed this issue said the exact same thing. Every one of them said we're confused about how can a generator store numbers. As a matter of usage, it's hard to say that a generator can store in any notable way. And the Supreme Court said you are wrong. It said a random or sequential number generator does store numbers, including numbers it does not generate. And the Supreme Court directed you to the pace brief. And in the pace brief — But do you think Duguid answers your question? I'm sorry? Do you think Duguid answers your question? Duguid and the pace brief absolutely answer our question. And Duguid cited the pace brief. And the pace brief says, and I'm quoting at page 23, an understanding of dialer technology. And both pace and the Supreme Court rejected Marks and Allen and Gadelhack and all the circuits that had said a generator can only produce. And they said, no, no, no, it can also store, quote, An understanding of this technology demonstrates how a number generator can store a number and not produce it for dialing. That's exactly what we have here. We agree, like in Meijer and a number of other cases, if you simply use an Excel or a text blast, you are not involving the TCPA. Now, is Borden distinguishable from the facts in your case in any meaningful way? Absolutely. We're talking in these cases, Borden, Meijer, and everything, we're talking about whether you are dealing with a list which is simply called from top to bottom. The U.S. Supreme Court and the pace brief said we are dealing when we're talking about text calls with, and I'm quoting, Congress was cognizant that certain telemarkers were using databases and lists for marketing dialing. You can't use that with a randomly generated phone number. Again, that's why my opposing counsel says. Counsel, why is, so let's put a random aside. Let's put random aside. Yes, sir. And just concentrate on sequential. Under your interpretation, you just said that it's not a problem if you're just calling a list from top to bottom. Yes, sir. But that list, you know, presumably algorithmically was created, you know, some program figured out how to store these numbers in order to call them sequentially, right? And if it stores them, I mean, if it did it alphabetically, then I don't think it would be a sequential number generator. But if it did it in any other basis, let's say it decided to store them in, just in numerical order, like it decided to store them so that they were in, you know, so that if it's a whatever digit telephone number so that they were in order from least to greatest, that would be, if the program decided to store them in that order so that they would be called in that order, why would that not be covered under your understanding? I'm sorry, Your Honor. We filed a supplement because everybody in the case, the Supreme Court, everybody has referred to the pace brief. And unfortunately, you didn't have the pace brief in the record. We put the pace brief into the record, the sections that the U.S. Supreme Court decided. And if you look at page 19, there's a diagram, and it explains exactly what you're talking about. You weren't talking about the system, the auto dialer. You were talking about the list. A list can't be created in any way. That's not the test. If a list is created by Excel, loaded into a system, and simply dialed top to bottom, that is not a random or sequential number generator. What we're asking the court is there's two steps here. Step number one is use the correct standard. And the correct standard is not to require that the telephone number must be created by the machine. The Supreme Court made that absolutely clear. And as Justice Kavanaugh said in Barr. Okay, you've got three minutes left. Hold on. Go ahead. This is just like your briefs. Just like your brief. You say it's not this, it's not this, it's not this. I'm trying to figure out what it is. So I asked you a question about what, why is that not a sequential? You said, no, you pointed me to a page on this amicus brief that has a bunch of, it looks like a bunch of, it's like a Venn diagram or something like that. It's a big diagram on there. Yes. Why, if it creates, you know, if essentially if the program does something like creates a list of data in a sequential order, I don't care what sequential order, but some numerically sequential order, right? And the first one is entry number one. The second one is entry number two. If it does that and then decides to text them in that order under your interpretation, is that covered as an auto dialer? And if it's not, I want to know why. If it is using, and again, I'm sorry that I keep referring to this diagram. This is how the system works. If the system uses an RSNG to process numbers from an external list and it does so in a random or sequential way, in our case it did sequentially by calendar dates, the defendant says, we already had these phone numbers. By calendar dates. Okay, this is important. So you're saying, so by the calendar date of when that number was provided to Facebook is your thought of how, so instead of using the actual number sequentially, it's storing them in an order that's based on a different data entry, which is the calendar date, that when it was provided. Yes. And then, and you're saying that's sequentially, and then it would text them in that order. It would text them not in that order. It would text them in a calendar order with another flag, which is the calendar must match the Facebook user's birth date. And then the text must match the friend's name. The reason it matters is because it says to store, let's get rid of produce, let's ignore that. To store telephone numbers to be called using a sequential number generator.  Yes, sir. To store telephone numbers to be called. Yes. Using a sequential number generator. So the numbers are to be called using the sequential number generator. They're to be stored so that they're to be called in that order using a sequential number generator. Is that not your view? The RSNG is storing them using sequential flags and targets. To be called. And to call them, yes, absolutely. But it has to be called using a sequential number generator.  It is not storing them as it was given them. It's not saying here's the first number, here's the second number. It has to take those numbers and it has to, in our brief, I think at page 36, there's all sorts of, as you said, technical processing things that you have to go through. The defendant said you have the numbers already. Why do you need an RSNG? Have them explain to you how this system could do a text blast campaign in this manner without using an RSNG. I gather if we agreed with your position, what, would we have a conflict with the Eighth Circuit's Beal case? With respect, the Third Circuit is already a conflict with the Eighth Circuit. No, if we reverse the district court, we'd create a split with the Third and the Eighth. No, you've aligned with the Third and you've disagreed with the Eighth. The Third says you do not need to create the phone number. I thought the Third, yeah, you quoted part of it, but it goes on to say it wasn't a violation of the text. Yes, it isn't because, again, it's a two-part process. Correct test. You don't have to create the number. Second part of the test, is the system at issue using an RSNG to store numbers in order, as the judge said, to dial them with a – The Third Circuit, I thought, said, okay, even if you're right – The Third Circuit on the facts, yes. The Third Circuit was dealing with numbers like in Meyer that were simply called top to bottom. That's not an RSNG. Well, those were people just – they were notifications, what, that somebody may be hacking your – That's Duguid. And Duguid, the U.S. Supreme Court says this system does not use an RSNG. You must use one. That's the key. They said you have to use one. And then the courts put a gloss on it and they said you have to use one to produce. But that means Congress said store and produce. It didn't. You can't change the wording. It said store or produce. So if I could reserve my little – Well, you have no time left. We've used all your time, but I'll give you two minutes for – Thank you, ma'am. All right. Thank you. Good morning. Good morning. May it please the Court. Samir Deghasan for Defendant Meta Platforms. Because this Court asked about Borden, I want to make clear at the outset. So we think plaintiff's claims here fail for two independent reasons, and one of them maps onto Borden. But however Borden comes out, we think that plaintiff's claim here will fail in any event. So first we think – Well, is this case – is Borden going to resolve this issue? If Borden – it can. But even if Borden comes out in favor of the plaintiff in Borden, we still have grounds for victory here. If Borden comes out in favor of the defendant, then there's – then certainly we would prevail here. Hails I win. Exactly, Your Honor. Not a surprise that you think – that we think that. But – so the reason is this. First, you know, the most straightforward path I think for this Court to take is to agree with the Eighth Circuit, with the decision in Meyer, and with over two dozen district courts. And find that the statute requires the ATDS to generate telephone numbers. And that's the issue in Borden. So in Borden, the device is alleged to – When the statute says produce, how do we know that it means produce the phone number itself versus produce the order in which the numbers are called? So that's not – that's the theory that is at issue in Borden, Your Honor. But I think that would be very, very far afield from the way in which Congress described the purposes of what the ATDS provision was trying to do. In Supreme Court – in De Guide, the Supreme Court made very clear that the provision has a narrow statutory design. It was intended to target only the kinds of unique harms that were at issue in 1991. And that was the sort of sequential dialing, the tiling up of blocks of emergency numbers, of hospital waiting rooms, and things of that nature. And remember, this is a provision that does not – did not target residential lines. So most of the phone numbers in the country in 1991 were not targeted by this kind of technology. This only addressed specialized lines. So De Guide says auto dialers could reach cell phones, pagers, unlisted numbers, inconveniencing customers, consumers, and imposing unwanted fees. So I don't like – I understand that De Guide focused on tying up the sequential lines in a business and also reaching emergency services. But I'm not sure that that's actually either in De Guide or in – if you look at the legislative history, that it actually was only about that. I mean, it talked about legislators were concerned with nuisance calls, right? So that's been a focus of your briefing, that it's like it's only narrowly limited to this one purpose. But I don't – I'm not sure that that's actually either an accurate portrayal of De Guide or of the statute, that that was all it was meant to do. I think it was also meant to address calls to cell phones. And I'm not sure why the sequential – why that would not be something in addition to those other two purposes. So in 1981, cell phones were a kind of specialized line. There were only 7 million cell phones in operation, and they were pretty big charges that you got just from receiving calls. And so, you know, what Congress was trying to do was target that, I think, in addition to the hospital waiting rooms. But all of those were sort of effectively kind of unlisted numbers. So the purpose was basically you have a technology that's out there creating 10-digit strings, and those 10-digit strings are reaching numbers that are outside of someone's possession, and that creates all of these public safety harms or it, you know, maybe creates unwanted charges. But it's not about numbers. It would be problematic if somebody was able to get a list of cell phone numbers and start calling them, too, right? It would create all the same sorts of problems. You'd get, you know, back then, I remember, you had a fee for every minute, you know, and you had a fee when you got taxed. Exactly, Your Honor. But Congress did not cover residential lines. So they weren't concerned about, for example, someone going through the actual phone book, which existed, and, you know, dialing in a random or sequential order. I mean, I think that's what the Eighth Circuit says in Beal, and I think it's very compelling. They weren't concerned about people, quote, receiving unsolicited calls from automatic dialer systems. Did they actually say they weren't concerned about residential lines? The ATDS provision does not apply to residential lines. Okay. And so I think that's very important. You know, if that was the primary thing, if it was about nuisance calls, then there's no way Congress would have left the home front unprotected. And DeGuid, I think, echoes all of this. It says that Congress was broadly concerned about intrusive telemarketing practices, however, does not mean that it adopted a broad auto dialer definition. And then it said, Congress expressly found the use of random or sequential number generator technology caused unique problems for business, emergency, and cellular lines. Unsurprisingly, then, the auto dialer definition Congress employed includes only such devices that use that technology. So I think DeGuid really does define this as a narrow statutory purpose. That aligns, I think, with the decision in Beal, and we hope the decision in Borden will come out to essentially say that the best way of reading the statute is it has to be the origination of phone numbers. There's no earthly reason that Congress really would have cared about the selection of numbers that are already in someone's possession. If someone has numbers in their possession, if they want to do it alphabetically, if they want to do it all at once, if they want to do it, you know, by engagement, these are all different ways of calling. Why would Congress care whether you did it randomly? You know, there's no reason to care about the ordering and selection of numbers in your possession. What Congress cared about was the origination of ten-digit strings outside of your possession that caused all of those unique harms. Congress obviously could care about whether or not you'd, for instance, even if you had a business. Let's say you had a list of all these businesses, right, these phone numbers, and so instead of calling them using a random, you know, calling them randomly, you actually had that list and you decided to target them, but you, but Congress could be concerned about the fact that you're using an auto dialer to target them. In other words, you're calling them automatically instead of having someone leaving, trying to leave messages or something. I don't understand the idea why Congress wouldn't be concerned about calling a list of phone numbers. I think Congress could have been. I think the question is what was Congress trying to do when it added the requirement of a random or sequential number generator? And the requirement of a random or sequential number generator wouldn't be that helpful if you already have. I think the hard question for you is what was Congress trying to do when it said to store telephone numbers using a random or sequential number generator? Because I think your reading and the Eighth Circuit's reading basically makes that a meaningless provision. I don't think so, Your Honor. I think as the Supreme Court explained, it was an attempt to clarify the domain. And so if you think of this, if you think of a phrase, for example, store or produce electricity using a generator, I think most people would think, well, that's not sort of a strange thing to say. Produce maps on to immediate production and store maps on to keeping it for later. And what Congress could have wanted to do here is just make sure that anyone wasn't going to try and circumvent the statute just by storing. And they could not have said store and produce. How would they circumvent the statute by storing? I mean, they would have been produced. You've done it like somebody would produce random numbers, say, or sequential numbers, and then sell them to somebody else, sell that, like, randomly produced number list to somebody else, and they would store them. I think there absolutely would have been litigation, Your Honor, if someone had stored a number for later dialing and didn't immediately call it, and someone would have, I think, would have made the argument, well, I'm not really producing the number because I'm just storing it. And so I think Congress wanted to clarify the domain, and that's what the Supreme Court said in De Gui, you know, or that it could have used a belt-and-suspenders approach. But that problem, I don't think, involves, you know, reading the rest of the opinion and then reading the statute to be as expansive, anywhere near as expansive as what plaintiffs say. I will also add one thing just on the plausibility front here, because even if this court or even the Borden court says that it doesn't have to be telephone numbers, we think we win in any event on plausibility grounds, because even if you have sort of an index number theory or there's some reason why, you know, it's just sort of dialing from a stored list, there has to at least be some reason why a defendant would want to be dialing arbitrarily. But that's the exact opposite of what happened here. Here, it was about a specific relationship. So it wouldn't be – first of all, it wouldn't necessarily be arbitrarily because it's sequential, right? I mean, random would be arbitrarily, but sequential wouldn't necessarily be arbitrarily. But secondly, the reason they might be doing that is because, you know, you have way too many numbers to call. You know, you have like, say, 10,000 numbers, and you can't text them all at one time for some technological reason, maybe because of spam filters or something like that. So you create an algorithm that batches them and sends them out. And so then you would be storing the telephone numbers to be called using a sequential number generator to be called in a certain order, right? So why wouldn't you be doing that? I think only if you're defining sequential number generator to sort of mean any algorithm or technology that, you know, ends up storing and then dialing any number, and that obviously is the exact definition that the Supreme Court rejected in Moffs. If you require it to mean something more precise, like actually generating a specific index number or something like that, I don't think there's any allegation or any reason why a company like Facebook would use a random number generator or a sequential number generator to generate an index number when there are a million other ways in which it could do this. As you described in your question, it could do it alphabetically. It seems like their suggestion was calendar dates. No, but it could do it. A date is a number. I mean, any of us who use spreadsheets, a date is actually a number. And it could be just storing them in an order, and that order is number. This is entry number 1. This is entry number 2. This is entry number 3. And if it's doing that, and if you're doing it for that, in order to be called, to be called in that order, it seems to me that then you are, Congress would be troubled by the idea that you are going to be calling these automatically as opposed to somebody actually picking, I'm going to call this number and call this number, but instead that a computer is what's picking the order that they're going to be called in. But I think that's plausible, Your Honor, but courts across the country have said you have to look at the specific messages that have been sent and look at the context, content, and the form. Here you have messages that were sent based on pre-specified relationships. And across the country, courts have said that can't be enough. Otherwise, a plaintiff can just unlock the doors of discovery by just saying, I think your technology is a quote, unquote, sequential number dialer. Can I have access to your confidential proprietary information? And then can I have $50,000 to go away? And courts across the country have said it's important. Iqbal establishes threshold pleading requirements that make it clear you have to do more than just parrot the statutory definition or just parrot footnote 7 or just assert that there is a sequential number. It has to be plausible. It has to be plausible. And if there are a thousand other ways in which you can do something, and here, for example, a much more obvious way is engagement. If someone hasn't been using Facebook for a long time, you might want to target them that way. But as soon as you have this precise targeting where people are being targeted based on specific relationships, there's no reason to think that you would use something which, at most, is most helpful when it's doing something either randomly or, as you say, in a preordained numerical sequence. But that numerical sequence can't just be everything one to the bottom because that, you know, then you could just send them all at once, for example. You have to give some meaning. You can't send them all at once. If you can't, and so for technological reasons, you're forced to batch them, essentially. You're forced to essentially put them in batches. And it seems to me that that would be covered here. I think you're filling out a hypothetical scenario that, A, the complaint doesn't lay out, but, B, I think you're providing reasons why someone may use a technology like that, and those reasons have to be inferable from the types of messages. So, for example, if you had an allegation against a company that's doing polling, you could say, you know, well, maybe this company wants to use a random number generator because it really wants a random sample. But when you have allegations that are just extremely targeted in the same way that they were in DeGweed, I mean, DeGweed was a pleadings case. It was a motion-to-dismiss case. When you have targeting of this kind, it's just not a plausible inference that someone would use a random or sequential number generator. Whatever that device is, it has to be grounded in some kind of purpose that isn't just it's possible it was used. It has to be used because they wanted some kind of arbitrary targeting or targeting based on a preordained sequence. So we think we went on plausibility grounds even if, and that's all, even if this Court rejects our primary textual theory, which is the one at issue in Borden. In Borden, it was exactly as you're describing it, Your Honor. It was essentially random or sequential dialing from a list. There wasn't that same kind of individual targeting. Okay, your time is up. You're over time. Thank you, Your Honor. But let me make sure Judge Van Dyke's had enough time with you. Thank you, Your Honor. Okay, thank you. All right. Two minutes. Two minutes. You hit it right on the head. If you call, again, if you call a residence, you can't send a text. One of two things happens. Either you send a voice message, which is separately covered. All voices' messages are prohibited. Or you talk to a human being. When you talk to a human being, you've got human intervention. You don't have an RSNG. Businesses, why were they concerned about businesses? He says, well, what if you have a list of businesses? That's not what they were concerned about. They were concerned about, as Your Honor said, yes, it produced, does mean you must produce the phone number. Absolutely. It was producing phone numbers, 0-1, 0-2, 0-3, 0-4, and as a result, back in the old days, the telex system used to have businesses in what were called rotaries. The businesses would have lines that went from 1 to 26. And when it did this, it would tie up every single line of a business. The concern wasn't calling one line on a business. The issue was exactly, and the Defendant's Counsel says, no, this is only police, fire, hospitals. No. What is Section 3 for? Section 3 deals with cell phones. It deals with consumers. Why did Congress undertake this? It didn't get deluged by calls from hospitals or police departments. It got deluged by calls from consumers. As Justice Kavanaugh said in Barr, we're talking about over 3.7 million complaints in one year for robocalls. These are robocalls which are being sent by text message. And the Court ended by saying, in plain English, which I think you're using, in plain English, the TCA prohibited almost all robocalls to cell phones. That judge knew what they had said in footnote 7 in Duguid. That court said that you are dealing with a system in which you're either creating phone numbers, which causes the problems to 1 and 2. Okay. You've used your extra time, so wrap up in 30 seconds. And therefore, I would suggest, Your Honor, that I agree with Defense Counsel Gordon. Gordon will govern or not, depending on what it does. We want to make sure that the courts, the Ninth Circuit, does not say that you have to produce the number, telephone number, in order to be covered. And if you say that, then you get to the question of what is the actual technology being used. Some is covered. Some is not. Thank you. Thank you both for your argument today. This matter will stand submitted.
judges: Gilman, CALLAHAN, VANDYKE